## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**Joshua Woods**

  *Plaintiff,*

  **v.**

**Experian Information Solutions, Inc., Equifax Information Services, LLC, Trans Union LLC, TD Bank USA, N.A.,** *and* **Rausch Sturm LLP,**

  *Defendants.*

Case No: _____

**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, **Joshua Woods** ("**Mr. Woods**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, Equifax Information Services, LLC ("**Equifax**"), Experian Information Solutions, Inc. ("**Experian**"), TD Bank USA, N.A., (**"Target"** or **"TD Bank"**), Trans Union LLC ("**Trans Union**"), and Rausch Sturm LLP ("**Rausch Sturm**") (collectively, the **"Defendants"**), stating as follows:

## PRELIMINARY STATEMENT

1.  This is an action brought by Mr. Woods against Rausch Sturm and Cegielski for violations of the *Fair Debt Collection Practices Act* ("**FDCPA**"), 15 U.S.C. § 1692, *et seq.*, against Rausch Sturm and TD Bank for violations of the *Florida Consumer Collection Practices Act*, Section 559.55, Florida Statutes, *et seq.*

("**FCCPA**"), and against Target, Experian, Equifax, and Trans Union for violations of the *Fair Credit Reporting Act*, 15 U.S.C. §1681, *et seq.* ("**FCRA**").

## JURISDICTION AND VENUE

2.     Subject matter jurisdiction arises under the FCRA, 15 U.S.C. § 1681p, the FDCPA, 15 USC 1692k(d), and 28 U.S.C. § 1331.

3.     This Court has supplemental jurisdiction for Mr. Woods's state law claims pursuant to 28 U.S.C. § 1367.

4.     The Defendants are subject to the provisions of the FDCPA, the FCCPA, and/or the FCRA and to the jurisdiction of this Court pursuant to Section 48.193, Florida Statutes, and Fed. R. Civ. P. 4(k).

5.     Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §1391(b)(2) because the acts complained of were committed and / or caused by the Defendants within this District.

## PARTIES

### Mr. Woods

6.     **Mr. Woods** is a natural person residing in Polk County, Florida, and a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c), the FDCPA, 15 U.S.C. § 1692a(3), and the FCCPA, Section 559.55(8), Florida Statutes.

### Equifax, Experian and Trans Union

7.     Equifax is a Georgia limited liability company, with a principal business

address of 1550 Peachtree Street NW, H-46, Atlanta, GA 30309.

8.      Equifax is registered to conduct business in the State of Florida, where its Registered Agent is Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

9.      Experian is an Ohio corporation with a principal business address of 475 Anton Boulevard, Costa Mesa, CA 92626.

10.     Experian is registered to conduct business in the State of Florida, where its registered agent is CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324.

11.     Trans Union is a Delaware limited liability company, with a principal business address of 555 West Adams Street, Chicago, IL 60661.

12.     Trans Union is registered to conduct business in the State of Florida, where its registered agent is, Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

13.     Experian, Equifax, and Trans Union are all CRAs within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that they, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engage in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and use various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

### TD BANK USA, N.A.

14. TD Bank, NA's corporate address is 2035 Limestone Road, Wilmington, DE 19808 and can be served at their registered agent, Corporation Service Company located at 251 Little Falls Drive, Wilmington, DE 19808.

### Rausch Sturm

15. Rausch Sturm is a *Debt Collector* within the meaning of the FDCPA, 15 U.S.C. § 1692a(6), and the FCCPA, Section 559.55(7), Florida Statutes, in that it uses instrumentalities of commerce, including postal mail and the internet, interstate and within the State of Florida, for its businesses, the principal purposes of which is the collection of debts, and/or it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to others.

16. Rausch Sturm's Registered Agent is Kenneth Wake and can be served at **300 North Executive Drive, Suite 200, Brookfield, Wisconsin 53005**.

### FACTUAL ALLEGATIONS

17. Around January 2022, Michael Pendergrass ("Pendergrass") opened a consumer Target store credit card, issued by TD Bank, using Mr. Woods personal information, such as his date of birth and Social Security number.

18. At no point did Mr. Woods give Pendergrass permission or authority to open charge accounts under his name.

19. By April 2023, there was balance of $950 on the Target account, which

TD Bank charged to profit and loss, deeming it uncollectable.

20.     TD Bank furnished information to Equifax, Experian and Trans Union (collectively, the "CRAs") about the Target account, indicating Mr. Woods was past-due and in default on the $950 balance.

21.     Mr. Woods disputes owing any such debt (the "**Debt**") as the Debt was the result of identity theft.

22.     Nonetheless, the Debt allegedly arose from expenses for consumer purchases for the benefit of family, personal, or household purposes, specifically and therefore meets the definitions of *Debt* under the FDCPA, 15 U.S.C. § 1692a(5), and the FCCPA, Section 559.55(6), Florida Statutes.

23.     Around June 2023, TD Bank hired Rausch Sturm to attempt to collect the Debt from Mr. Woods.

24.     On June 23, 2023, Rausch Sturm and Attorney Halina T. Cegielski filed a lawsuit in Polk County, Florida, claiming Mr. Woods owed $950.

25.     Neither Rausch Sturm nor TD Bank had any actual intention of litigating the matter, e.g., proving at trial he owed the debt.

26.     The purpose in filing the lawsuit was to either use legal action as a crowbar to pry settlement from Mr. Woods, or, in the event Mr. Woods did not show for the pre-trial hearing, to quickly obtain default judgment and then obtain wage garnishment.

27.     Public records show thousands of collection lawsuits filled annually by Rausch Sturm in small claims courts in Florida on behalf of TD Bank and other creditors; none, or virtually none, of the small claims cases result in actual adjudication on the merits of the case.

28.     On November 8, 2023, Mr. Woods appeared, *pro se*, at the pre-trial hearing in front of the Hon. John B. Flynn, and explained the account was the result of identity theft, that he disputed liability, and refused to pay.

29.     The court memo for the hearing states "Plaintiff to send fraud packet to defendant within 10 days" and notes Elana Fornaro appeared virtually on behalf of TD Bank. **SEE PLAINTIFF'S EXHIBIT A.**

30.     Mr. Woods did not receive a "fraud packet" from Rausch Sturm nor TD Bank.

31.     Neither Rausch Sturm nor TD Bank sent any "fraud packet" to Mr. Woods.

32.     Mr. Woods also represented himself *pro se* at a status hearing March 13, 2024 in Polk County Court. **SEE PLAINTIFF'S EXHIBIT B.**

33.     Mr. Woods again reiterated he disputed the Debt, refused to pay, and that it was the result of identity theft. ***Id.***

34.     A trial was set for June 17, 2024 by Judge Flynn. ***Id.***

35.     On June 12, 2024, Kaelin Richard, an attorney at Rausch Sturm and

acting as an attorney for TD Bank, filed a Motion to Continue the June 17, 2024 trial and stated that "at the time of this filing, it does not appear that Defendant has received a fraud affidavit." **SEE PLAINTIFF'S EXHIBIT C.**

36.     Mr. Woods once again did not receive one because neither Rausch Sturm nor TD Bank sent one.

37.     Richard, on behalf of Rausch Sturm and TD Bank, stated in its motion to the court that "During the Pretrial Conference on March 13, 2024, Defendant appeared and alleged fraud."

38.     As the written court records indicate, Rausch Sturm and TD Bank were aware Mr. Woods affirmatively stated that he was the victim of identity theft as early as than August 16, 2023.

39.     On June 12, 2024, Jonathan B. Smith, an attorney at Rausch Sturm, filed a "notice of serving witnesses and exhibit list," dated June 2, 2024, stating it had served a list of witnesses and exhibits concerning the upcoming June 17, 2024 trial.

40.     The notice states Rausch Sturm "hereby provides notice of service upon opposing counsel," although Mr. Woods was representing himself, *pro se*.

41.     Rausch Sturm once again made intentionally false statements, as it was aware, from multiple prior interactions, that Mr. Woods was representing himself, *pro se*.

42.    Additionally, no Notice of Appearance by any attorney was ever filed on behalf of Mr. Woods.

43.    Further, Rausch Sturm's motion was not mere typographical error; at no point was Mr. Woods actually provided with a witness list or exhibits.

44.    In response to Rausch Sturm's motion, Judge Flynn set a trial date of August 22, 2024.

45.    Rausch Sturm and TD Bank were clearly aware Mr. Woods disputed the debt and refused to pay.

46.    On August 10, 2024, Rausch Sturm, as Counsel for TD Bank, mailed Mr. Woods a collection letter, offering to settle the debt for $665.63 in two payments of $332.82, with the first one due September 9, 2024 – e.g., several weeks *after* the trial was scheduled. **SEE PLAINTIFF'S EXHIBIT D.**

47.    The letter also offered a payment plan of $100 per month beginning on September 10, 2024 – also after the trial was scheduled to conclude. ***Id.***

48.    Rausch Sturm's letter did not mention the ongoing lawsuit scheduled for trial on August 22, or that the agreement to make payments after the trial date would not necessarily terminate the trial, and Mr. Woods could still have judgment entered against him. ***Id.***

49.    The failure to include this information renders Rausch Sturm's actions materially misleading.

50. Moreover, the letter offering a discounted settlement amount with payments to start after the trial date (which Rausch Sturm had already gotten pushed back once) tends to indicate Rausch Sturm had no intention of actually attending the trial and obtaining judgment against Mr. Woods.

51. On August 14th, 2024, Rausch Sturm sent copies of the exhibits to Mr. Woods via UPS 2nd-day air, to be delivered on August 16, 2024.

52. Rausch Sturm was required to provide these documents to Mr. Wood at least 10 days prior to trial, e.g., by August 11, 2024.

53. By August 12, 2024, Rausch Sturm was aware it could not possibly comply with its requirement to provide documents it intended to use at trial to Mr. Woods with sufficient notice to him.

54. Despite knowing the Debt was the result of identity theft, and despite knowing it was out-of-compliance with its legal obligations to provide copies of exhibits and a witness list to Mr. Woods in advance of trial, Rausch Sturm provided no notice to the Court, to Judge Flynn, or to Mr. Woods it intended to discontinue litigation.

55. Rather than dismissing the case, or at the minimum, asking for another postponement, Rausch Sturm simply did not show up for the trial, wasting more of Mr. Woods's – who did attend the trial – and the Court's time.

56. Despite having at least two different attorneys, Cegielski and Richard,

file documents on their behalf throughout the case, and multiple attorneys, Ryan Enage, Elana Fornaro, and Lyon cover the hearings, no attorney from Rausch Sturm appeared for TD Bank at the August 22, 2024 trial. **SEE PLAINTIFF'S EXHIBIT A, B, C, and E.**

57.     Judge Flynn dismissed the claim with prejudice. **SEE PLAINTIFF'S EXHIBIT E.**

58.     Rausch Sturm also utilized other brazen and unlawful collection tactics in attempts to collect a disputed, fraudulent $950 debt from Mr. Woods.

59.     For example, in May 2024, Rausch Sturm called Mr. Woods's grandparents in North Tonawanda, New York, using the phone number 716-755-3368.

60.     Calling the phone number 716-755-3368 on October 22, 2024 resulted in an automated voice stating, "Thank you for calling Rausch Sturm."

61.     In the May 2024 call to Mr. Woods's grandparents, Rausch Sturm disclosed that Mr. Woods allegedly owed a debt and that Rausch Sturm was a debt collector, even though Mr. Woods had never consented to disclosure of the debt to any third party, much less his grandparents.

62.     Mr. Woods's grandmother became worried and called Mr. Woods stating that a debt collector had called her concerning Mr. Woods, causing great embarrassment for Mr. Woods.

63.     All told, Mr. Woods reasonably estimates he spent 15 hours appearing at court hearings, traveling, and researching information.

64.     Despite TD Bank being aware the Debt stemmed from identity theft at least since November 2023, TD Bank continued to report the account to Experian, as well as Trans Union and Equifax, as an unpaid charge-off, monthly.

65.     TD Bank reported the account to Equifax, Experian and Trans Union on September 4, 2024 – well after it was a no-show at a trial in which it was plaintiff.

66.     Reporting a debt to a CRA is an attempt to collect the debt alleged therein. *See, e.g., Edeh v. Midland Credit Management, Inc.*, 748 F. Supp. 2d 1030 (D. Minn. 2010) ("The Court has learned, through its work on countless FDCPA cases, that threatening to report and reporting debts to CRAs is one of the most commonly-used arrows in the debt collector's quiver.")

67.     In September 2024, Mr. Woods disputed the TD Bank tradeline to Experian, Equifax and Trans Union, stating the account was fraudulent and the result of identity theft by Pendergrass, that a police report had been filed over the matter, including the relevant Polk County Sheriff's Office report number, and that the lawsuit filed by TD Bank had been dismissed with prejudice, including the relevant case number. **SEE PLAINTIFF'S EXHIBIT F.**

68.     Despite having readily available, objective evidence the information

being reported by TD Bank was not accurate, none of the CRAs made any investigation of their own whatsoever, and each utilized their automated systems to initiate an *Automated Consumer Dispute Verification* Requests ("**ACDVs**") which were delivered to TD Bank through a system known as e-OSCAR.

69.     No human employee or contractor at any of the CRAs reviewed the disputes or documentation.

70.     TD Bank responded to the ACDVs, certifying to the CRAs its information was accurate and required no update, change, or modification. **SEE PLAINTIFF'S EXHIBIT F.**

71.     If a data furnisher like TD Bank decides to report disputed information as verified, "the question of whether the furnisher behaved reasonably will turn on whether the furnisher acquired sufficient evidence to support the conclusion that the information was true." *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295 (11th Cir. 2016).

72.     Zero evidence exists to support the conclusion that TD Bank's reported data was true. As such, TD Bank could not have possibly obtained sufficient evidence to support that its reports were accurate.

73.     TD Bank also failed to report the account as a disputed debt to Equifax.

74.     TD Bank reported to Experian the account as "previously in dispute,"

implying that any dispute made had been resolved and that all parties now agree Mr. Woods owes the debt, which is patently false.

75.     The failure to update a report to indicate that a debt is disputed can, in and of itself, violate the FCRA. *See Saunders v. Branch Banking and Trust Co. of VA*, 526 F.3d 142 (4th Cir. 2008).

76.     For plainly obvious reasons, TD Bank failed to make a reasonable investigation into Mr. Woods's disputes. No reasonable investigation could have determined that the Debt was legitimately owed by Mr. Woods, in light of the fact Mr. Woods repeatedly stated it was fraud, in open court, filed a police report over the Debt, and provided a detailed explanation of who opened the account fraudulently, and how Pendergrass did so.

77.     The CRAs also failed to make reasonable investigations into Mr. Woods's dispute.

78.     Upon receipt of the ACDV response, the CRAs utilized an automated system which made rudimentary checks of tradeline data between what TD Bank had reported and the data contained in CRAs' own files on Mr. Woods, *e.g.*, his name, address, date of birth, and Social Security number.

79.     For nearly 40 years, courts in this district have recognized that a CRA cannot rely upon its data furnisher exclusively, when the consumer disputes the accuracy of the furnisher's version of events and provides evidence to the contrary.

The CRA must make some independent investigation of its own. "Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [data furnisher]." *Swoager v. Credit Bureau of Greater St. Petersburg*, 608 F. Supp. 972 (M.D.Fla.1985).

80.     If the CRA knows or should know that the furnisher is unreliable, then a "reasonable reinvestigation" may require verifying the accuracy of the furnisher's information directly. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

81.     Experian (as well as the other CRA defendants) had many reasons to know TD Bank was not reliable.

82.     Perhaps paramount amongst these reasons was that TD Bank was ordered to pay $28 Million for reporting false information to the very same CRAs, specifically alleging TD Bank "gave consumer reporting companies information it knew or suspected was fraudulent." See *CFPB Orders TD Bank to Pay $28 Million for Breakdowns that Illegally Tarnished Consumer Credit Reports*, Press Release, Sept. 11, 2024.

83.     The CFPB's investigation found that TD Bank had furnished information about hundreds of thousands of fraudulent accounts to the CRAs, and then continued to report them after knowledge of fraud. *Id*.

84.     In particular, Experian was a co-defendant in a 2021 class action lawsuit concerning TD Bank's wide-spread and systematic failures to investigate disputed Nordstrom's credit card accounts. *Harris v. Experian Information Solutions, Inc., Nordstrom, Inc., and TD Bank USA, N.A.*, Case No. 2:21-cv-06558 (E.D.N.Y. 2021)

85.     On information and belief, TD Bank utilizes third-party, overseas dispute processing contractors who respond to incoming ACDVs, typically at wages below the minimum wage in the United States.

86.     TD Bank did not provide any of the CRAs any information or evidence to suggest Mr. Woods did legitimately owe the Debt.

87.     Nonetheless, all the CRAs accepted TD Bank's electronic checkmark in a box indicating its data was "verified as accurate" to start—and finish—their "investigations."

88.     In other words, a single click of the mouse by TD Bank was viewed by all the CRAs as *more* persuasive than Mr. Woods narrative, court records, and police report.

89.     The information provided in Mr. Woods disputes was readily, easily, and objectively verifiable, especially considering pleadings concerning small claims cases in Polk County are available online.

90.     The CRAs were not required to make an extensive legal analysis when

reviewing the dispute, but instead view an order by the court in which a case concerning the exact disputed matter had been dismissed with prejudice.

91.     Further, the disputes required only factual inquiry: either TD Bank sued Mr. Woods, who then alleged fraud, with TD Bank not showing for the trial and the case being dismissed with prejudice, or it did not.

92.     Likewise, either Mr. Woods filed a police report the Polk County Sheriff's Office alleging the Pendergrass opened the Target account in his name, fraudulently, or not such report was filed.

93.     Prevalent unreliable information from a data furnisher should have put the CRAs on notice that problems exist, requiring it to investigate independently. *See Sarver v. Experian Information Solutions*, 390 F.3d 969, 972 (7th Cir. 2004).

94.     Subsequent disputes to Experian and Equifax resulted in a virtual repeat of events – the CRAs sent ACDVs to TD Bank, whose contractors quickly verified the information was "accurate," and this concluded the CRAs "investigations."

95.     The CRAs' knowing and repeated conduct warrants an award of *punitive damages*. *See, e.g., Younger v. Experian Info. Sols., Inc.*, Case No.: 2:15-cv-00952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages against Experian for its repeated, willful violations of the FCRA).

96.    Mr. Woods made a subsequent dispute to Equifax in October 2024, again providing documents and narratives explaining that the TD Bank/Target account was fraudulent and the result of identity theft.

97.    The same series of events played out again, with Equifax simply sending TD Bank another ACDV, which it quickly verified as "accurate" and resulted in no change to the reporting.

98.    Each of the CRAs have sold multiple reports about Mr. Woods containing the false and defamatory TD Bank tradeline.

99.    For example, Experian furnished a report on Mr. Woods to Publix Employees Credit Union on September 3, 2024.

100.   Mr. Woods has hired the aforementioned law firm to represent him in this matter and has assigned his right to fees and costs to such firm.

**<u>COUNT I</u>**
**<u>TD BANK'S WILLFUL VIOLATIONS OF THE</u>**
**<u>FCRA, 15 U.S.C. § 1681s-2(b)</u>**

101.   Mr. Woods hereby incorporates paragraphs 1 – 100 as if fully stated herein.

102.   TD Bank violated **15 U.S.C. § 1681s-2(b)** when it failed, on at least five separate occasions, to conduct a reasonable investigation after receiving notice of dispute of the Account from Experian, Equifax and Trans Union, as any reasonable investigation would have concluded that the Target Account could not be verified as accurate, as it was clearly the result of identity theft and fraud by another individual,

Pendergrass, something TD Bank was, or should have been, well apprised of from protected court proceedings in addition to the information supplied by Mr. Woods in his disputes.

103.     Further, no reasonable investigation would have determined the Debt was *not* disputed by Mr. Woods.

104.     TD Bank's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not, and as undisputed, or previously disputed, when still disputed.

105.     TD Bank's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations.

106.     Accordingly, pursuant to 15 U.S.C. § 1681n, TD Bank is liable to Mr. Woods for the greater of his actual damages and statutory damages of up to $1,000 for *each occurrence*, as well as punitive damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Mr. Woods respectfully requests this Honorable Court to enter judgment against TD Bank for:

    a.    The greater of statutory damages of $1,000 per incident or Mr. Woods's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

    b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

    c.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3); and,

    d.    Such other relief that this Court deems just and proper.

**COUNT II**
**TD BANK'S NEGLIGENT VIOLATIONS OF THE**
**FCRA, 15 U.S.C. § 1681s-2(b)**
**(Pled in the Alternative to Count I)**

107.   Mr. Woods hereby incorporates paragraphs 1 – 100 as if fully stated herein.

108.   TD Bank owed Mr. Woods a legal duty to conduct a reasonable investigation upon receiving notice from a CRA that Mr. Woods disputed the Target tradeline.

109.   TD Bank breached this duty when it failed on at least 5 separate occasions, to conduct a reasonable investigation after receiving notice of dispute of the Account from Experian, Equifax and/or Trans Union, as any reasonable investigation would have concluded that the Target Account could not be verified as accurate, as it was clearly the result of identity theft and fraud by another individual, Pendergrass, something TD Bank was, or should have been, well apprised of from protected court proceedings in addition to the information supplied by Mr. Woods in his disputes.

110.   At minimum, TD Bank should have updated its reporting to reflect the Account was disputed by Mr. Woods.

111.   TD Bank therefor negligently violated 15 USC § 1681s-2(b), and pursuant to 15 U.S.C. § 1681o, TD Bank is liable to Mr. Woods for his actual damages, as well as his reasonable attorney's fees, and costs.

**WHEREFORE,** Mr. Woods respectfully requests this Honorable Court to enter judgment against TD Bank for:

a.  Mr. Woods's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.  Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.  Such other relief that this Court deems just and proper.

### COUNT III
### EXPERIAN'S WILLFUL VIOLATIONS OF THE
### FCRA, 15 U.S.C. § 1681i(a)(1)(A)

112.  Mr. Woods hereby incorporates paragraphs 1 – 100 as if fully stated herein.

113.  Experian violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to conduct a reasonable investigation into at least two disputes of the TD Bank tradeline by Mr. Woods, since any reasonable investigation would have concluded that the TD Bank/Target account could not be verified as accurate, in light of court records, a police report, and narrative from Mr. Woods explaining in detail the account was fraud an opened by Pendergrass, especially when TD Bank has a history of furnishing false information concerning disputed consumer accounts and TD Bank provided Experian no other evidence beyond clicking a box on an electronic form indicating its information was "accurate."

114.  Additionally, Experian should have updated its reporting to reflect the Account was disputed by Mr. Woods since it obviously was.

115.  Experian's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not, and as undisputed, or previously disputed, when still disputed.

116.    Experian's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations.

117.    Accordingly, pursuant to 15 U.S.C. § 1681n, Experian is liable to Mr. Woods for the greater of his actual damages and statutory damages of up to $1,000 for *each occurrence*, as well as punitive damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Mr. Woods respectfully requests this Honorable Court to enter judgment against Experian for:

a.    The greater of statutory damages of $1,000 per incident or Mr. Woods's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3); and,

d.    Such other relief that this Court deems just and proper.

<u>**COUNT IV**</u>
<u>**EXPERIAN'S NEGLIGENT VIOLATIONS OF THE**</u>
<u>**FCRA, 15 U.S.C. § 1681i(a)(1)(A)**</u>
<u>**(Pled in the Alternative to Count III)**</u>

118.    Mr. Woods hereby incorporates paragraphs 1 – 100 as if fully stated herein.

119.    Experian violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to conduct a reasonable investigation into at least two disputes of the TD Bank tradeline by Mr. Woods, since any reasonable investigation would have concluded that the TD

Bank/Target account could not be verified as accurate, in light of court records, a police report, and narrative from Mr. Woods explaining in detail the account was fraud an opened by Pendergrass, especially when TD Bank has a history of furnishing false information concerning disputed consumer accounts and TD Bank provided Experian no other evidence beyond clicking a box on an electronic form indicating its information was "accurate."

120.    Additionally, Experian should have updated its reporting to reflect the Account was disputed by Mr. Woods.

121.    Experian owed Mr. Woods a legal duty to reasonably investigate his disputes.

122.    Experian breached this duty when it verified the TD Bank account as accurate, and without indicating Mr. Woods disputed the information.

123.    Experian's conduct was therefore negligent, and pursuant to 15 U.S.C. § 1681o, Experian is liable to Mr. Woods for his actual damages, as well as his reasonable attorney's fees, and costs.

**WHEREFORE,** Mr. Woods respectfully requests this Honorable Court to enter judgment against Experian for:

a.    Mr. Woods's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681o(a)(2); and,

c.    Such other relief that this Court deems just and proper.

## COUNT V
## TRANS UNION'S WILLFUL VIOLATIONS OF THE
## FCRA, 15 U.S.C. § 1681i(a)(1)(A)

124. Mr. Woods hereby incorporates paragraphs 1 – 100 as if fully stated herein.

125. Trans Union violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to conduct a reasonable investigation into at least two disputes of the TD Bank tradeline by Mr. Woods, since any reasonable investigation would have concluded that the TD Bank/Target account could not be verified as accurate, in light of court records, a police report, and narrative from Mr. Woods explaining in detail the account was fraud an opened by Pendergrass, especially when TD Bank has a history of furnishing false information concerning disputed consumer accounts and TD Bank provided Trans Union no other evidence beyond clicking a box on an electronic form indicating its information was "accurate."

126. Additionally, Trans Union should have updated its reporting to reflect the Account was disputed by Mr. Woods.

127. Trans Union's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not, and as undisputed, or previously disputed, when still disputed.

128. Trans Union's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations.

129.   Accordingly, pursuant to 15 U.S.C. § 1681n, Trans Union is liable to Mr. Woods for the greater of his actual damages and statutory damages of up to $1,000 for *each occurrence*, as well as punitive damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Mr. Woods respectfully requests this Honorable Court to enter judgment against Trans Union for:

a.   The greater of statutory damages of $1,000 per incident or Mr. Woods's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.   Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.   Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3); and,

d.   Such other relief that this Court deems just and proper.

## COUNT VI
## TRANS UNION'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681i(a)(1)(A)
## (Pled in the Alternative to Count V)

130.   Mr. Woods hereby incorporates paragraphs 1 – 100 as if fully stated herein.

131.   Trans Union violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to conduct a reasonable investigation into at least two disputes of the TD Bank tradeline by Mr. Woods, since any reasonable investigation would have concluded that the TD Bank/Target account could not be verified as accurate, in light of court records, a police report, and narrative from Mr. Woods explaining in detail the account was fraud an opened by Pendergrass, especially when TD Bank has a history of furnishing

false information concerning disputed consumer accounts and TD Bank provided Trans Union no other evidence beyond clicking a box on an electronic form indicating its information was "accurate."

132.   Additionally, Trans Union should have updated its reporting to reflect the Account was disputed by Mr. Woods.

133.   Trans Union owed Mr. Woods a legal duty to reasonably investigate him disputes.

134.   Trans Union breached this duty when it verified the TD Bank account as accurate, and without indicating Mr. Woods disputed the information.

135.   Trans Union's conduct was therefore negligent, and pursuant to 15 U.S.C. § 1681o, Trans Union is liable to Mr. Woods for his actual damages, as well as his reasonable attorney's fees, and costs.

**WHEREFORE,** Mr. Woods respectfully requests this Honorable Court to enter judgment against Trans Union for:

a.   Mr. Woods's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.   Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681o(a)(2); and,

c.   Such other relief that this Court deems just and proper.

<u>**COUNT VII**</u>
<u>**EQUIFAX'S WILLFUL VIOLATIONS OF THE**</u>
<u>**FCRA, 15 U.S.C. § 1681i(a)(1)(A)**</u>

136.   Mr. Woods hereby incorporates paragraphs 1 – 100 as if fully stated herein.

137.   Equifax violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to conduct a reasonable investigation into at least three disputes of the TD Bank tradeline by Mr. Woods, since any reasonable investigation would have concluded that the TD Bank/Target account could not be verified as accurate, in light of court records, a police report, and narrative from Mr. Woods explaining in detail the account was fraud an opened by Pendergrass, especially when TD Bank has a history of furnishing false information concerning disputed consumer accounts and TD Bank provided Equifax no other evidence beyond clicking a box on an electronic form indicating its information was "accurate."

138.   Additionally, Equifax should have updated its reporting to reflect the Account was disputed by Mr. Woods.

139.   Equifax's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not, and as undisputed, or previously disputed, when still disputed.

140.   Equifax's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable

investigations, and its policies could reasonably be foreseen to cause harm to Mr. Woods.

141.    Accordingly, pursuant to 15 U.S.C. § 1681n, Equifax is liable to Mr. Woods for the greater of his actual damages and statutory damages of up to $1,000 for *each occurrence*, as well as punitive damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Mr. Woods respectfully requests this Honorable Court to enter judgment against Equifax for:

a.    The greater of statutory damages of $1,000 per incident, or Mr. Woods's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.    Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3); and,

d.    Such other relief that this Court deems just and proper.

**COUNT VIII
EQUIFAX'S NEGLIGENT VIOLATIONS OF THE
FCRA, 15 U.S.C. § 1681i(a)(1)(A)
(Pled in the Alternative to Count VII)**

142.    Mr. Woods hereby incorporates paragraphs 1 – 100 as if fully stated herein.

143.    Equifax violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to conduct a reasonable investigation into at least two disputes of the TD Bank tradeline by Mr. Woods, since any reasonable investigation would have concluded that the TD Bank/Target account could not be verified as accurate, in light of court records, a

police report, and narrative from Mr. Woods explaining in detail the account was fraud an opened by Pendergrass, especially when TD Bank has a history of furnishing false information concerning disputed consumer accounts and TD Bank provided Equifax no other evidence beyond clicking a box on an electronic form indicating its information was "accurate."

144.   Additionally, Equifax should have updated its reporting to reflect the Account was disputed by Mr. Woods.

145.   Equifax owed Mr. Woods a legal duty to reasonably investigate his disputes.

146.   Equifax breached this duty when it verified the TD Bank account as accurate, and without indicating Mr. Woods disputed the information.

147.   Equifax's conduct was therefore negligent, and pursuant to 15 U.S.C. § 1681o, Equifax is liable to Mr. Woods for his actual damages, as well as his reasonable attorney's fees, and costs.

**WHEREFORE,** Mr. Woods respectfully requests this Honorable Court to enter judgment against Equifax for:

a.   Mr. Woods's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.   Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681o(a)(2); and

c.   Such other relief that this Court deems just and proper.

## COUNT IX
## VIOLATIONS OF THE FDCPA, § 1692e and 1692e(10)
## Rausch Sturm

148.   Mr. Woods adopts and incorporates paragraphs 1 – 100 as if fully stated herein.

149.   Rausch Sturm violated **15 U.S.C. § 1692e and 1692e(10)** when Rausch Sturm used false, deceptive, and misleading representations in connection with the collection of a consumer debt by engaging in a series of actions designed to deceive Mr. Woods into believing they intended to prove by a preponderance of evidence at trial that Mr. Woods owed the disputed Debt. In reality, at no point did anyone at Rausch Sturm actually intend to attend a trial in Polk County Court and prove Mr. Woods owed the Debt; rather, they relied upon their perceived superior position as attorneys to act as a crowbar in an attempt to leverage a settlement from Mr. Woods, a *pro se* defendant.

150.   Rausch Sturm violated **15 U.S.C. § 1692e** and **1692e(10)** when Rausch Sturm's attorneys used false, deceptive, and misleading representations in connection with the collection of a consumer debt by continuing to prosecute a court case against Mr. Woods well after they knew the underlying debt was fraudulent, when they made false statements to Judge Flynn in Polk County, including certification that a copy of the witness list and exhibits intended to be used at trial had been furnished to Mr. Woods, months before any such witness

list and exhibits were actually provided to Mr. Woods, and their failure to cancel or postpone a trial which they had no intention of showing for.

151.   Rausch Sturm violated 15 U.S.C. § 1692e and 1692e(10) when it used false, deceptive, and misleading representations in connection with the collection of a consumer debt by sending a collection letter offering a payment plan on a debt it knew was disputed and fraudulent, and which stated payments could begin after the de

**WHEREFORE,** Mr. Woods respectfully requests that this Honorable Court enter judgment against Rausch Sturm for:

a.   Statutory damages of **$1,000**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.   Actual damages, including damages for loss of credit opportunities, damage to credit scores, and emotional distress pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.   Such other relief that this Court deems just and proper

## COUNT X
## VIOLATIONS OF THE FDCPA, § 1692f
## Rausch Sturm

152.   Mr. Woods adopts and incorporates paragraphs 1 – 100 as if fully stated herein.

153.    Rausch Sturm violated 15 U.S.C. § 1692f when Rausch Sturm engaged in repeated unfair and unconscionable actions in connection with the collection of a consumer debt. Rausch Sturm intentionally made false statements to a court of law to prosecute a bogus collection lawsuit against Mr. Woods – actions which are unconscionable even if done by a layperson, but especially when done by trained attorneys at law. Rausch Sturm knew they would not prevail at trial and had no intention of ever attending a trial, and hoped that a looming trial date would compel Mr. Woods, a *pro se* defendant, into settling a disputed, fraudulent debt.

**WHEREFORE**, Mr. Woods respectfully requests that this Honorable Court enter judgment against Rausch Sturm for:

a.    Statutory damages of $1,000, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.    Actual damages, including damages for loss of credit opportunities, damage to credit scores, and emotional distress pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.    Such other relief that this Court deems just and proper

## COUNT XI
## VIOLATIONS OF THE FDCPA, § 1692(2)(a)
## Rausch Sturm

154.   Mr. Woods adopts and incorporates paragraphs 1 – 100 as if fully stated herein.

155.   Rausch Sturm violated 15 U.S.C. § 1692e(2)(a) when Rausch Sturm's attorneys made false representations about the character, amount and legal status of a consumer debt, in connection with the collection of said consumer debt, by repeatedly claiming to a court of law that a debt was legitimate when they knew it was not, and that Mr. Woods did not owe TD Bank anything.

**WHEREFORE,** Mr. Woods respectfully requests that this Honorable Court enter judgment against Rausch Sturm for:

    a.    Statutory damages of $1,000, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

    b.    Actual damages, including damages for loss of credit opportunities, damage to credit scores, and emotional distress pursuant to 15 U.S.C. § 1692k(a)(2)(A);

    c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

    d.    Such other relief that this Court deems just and proper.

## COUNT XII
## VIOLATIONS OF THE FDCPA, § 1692(c)(b)
## Rausch Sturm

156.  Mr. Woods adopts and incorporates paragraphs 1 – 100 as if fully stated herein.

157. Rausch Sturm violated 15 U.S.C. § 1692c(b) when Rausch Sturm communicated with Mr. Woods's grandparents in connection with the collection of a consumer debt, and disclosed that Mr. Woods allegedly owed a debt to Mr. Woods's grandmother.

**WHEREFORE,** Mr. Woods respectfully requests that this Honorable Court enter judgment against Rausch Sturm for:

    a.    Statutory damages of $1,000, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

    b.    Actual damages, including damages for loss of credit opportunities, damage to credit scores, and emotional distress pursuant to 15 U.S.C. § 1692k(a)(2)(A);

    c.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

    d.    Such other relief that this Court deems just and proper

## COUNT XIII
## <u>VIOLATIONS OF THE FCCPA</u>
## <u>Rausch Sturm and TD Bank</u>

158.   Mr. Woods adopts and incorporates paragraphs 1 – 100 as if fully stated herein.

159.   TD Bank violated **Section 559.72(5), Florida Statutes**, when TD Bank reported the fraudulent Debt to Experian, Equifax and Trans Union, well after being made aware the Debt was fraudulent and well after it no-showed at its own trial attempting to enforce the Debt against Mr. Woods, and made reports to the nationwide CRAs with full knowledge that the information it was reporting about Mr. Woods was false.

160.   TD Bank made its reports to the CRAs with malice, in an attempt to intentionally harm Mr. Woods.

161.   "Malice can be established by evidence showing the defendant made a false statement 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Long v. Pendrick Capital Partners II, LLC*, Case No.: GJH-17-1955 (D. Md. Mar. 18, 2019) (quoting *New York Times v. Sullivan*, 376 U.S. 254, 270-80 (1964) ("A jury could conclude that (Defendant) acted with reckless disregard for the truth when it initially furnished data about the disputed Emcare debt to the CRAs and when it verified the debt more than once. Plaintiff put

(Defendant) on notice that she was not responsible for the Emcare debt, yet (Defendant) reported the debt anyway.")

162.  Rausch Sturm violated **Section 559.72(9), Florida Statutes**, when they asserted legal rights that did not exist, specifically, the right to make false statements to a court of law in connection with the collection of a consumer debt. Rausch Sturm made false statements to Judge Flynn, including when they were first advised the debt was fraudulent, and that copies of a witness list and exhibits had been provided to Mr. Woods.

163.  TD Bank and Rausch Sturm are jointly and severally liable for the above-stated violations of the FCCPA, and Mr. Woods is thereby entitled to statutory damages not to exceed $1,000, plus costs and attorneys' fees.

**WHEREFORE,** Mr. Woods respectfully requests that this Honorable Court enter judgment against TD Bank and Rausch Sturm jointly and severally, for:

a.  Statutory damages of **$1,000** pursuant to Section 559.77(2), Florida Statutes;

b.  Actual damages, including damages for loss of credit opportunities, damage to credit scores, and emotional distress pursuant to Section 559.77(2), Florida Statutes;

c.  Punitive damages for the Defendants' intentional and egregious behavior,

d.  Injunctive relief prohibiting Rausch Sturm and TD Bank from trying to collect the bogus debt from Mr. Woods;

e.  Reasonable costs and attorneys' fees pursuant to Section 559.77(2), Florida Statutes; and

f.  Such other relief that this Court deems just and proper.

### **DEMAND FOR JURY TRIAL**

Mr. Woods hereby demands a trial on all issues so triable.

Respectfully submitted on **October 30, 2024**, by:

**SERAPH LEGAL, P.A.**

*/s/ Christian Cok*
Christian E. Cok, Esq.
FL Bar No. 1032167
Email: CCok@Seraphlegal.Com
2124 W. Kennedy Blvd., Suite A
Tampa, FL 33606
Tel: 813-567-1230
Fax: 855-500-0705
*Lead Attorney for Plaintiff*

*/s/ Thomas Bonan*
Thomas Bonan, Esq.
Florida Bar Number: 118103
tbonan@seraphlegal.com
*Counsel for Plaintiff*

**<u>ATTACHED EXHIBIT LIST</u>**

A.   Court Memo Concerning Pre-Trial Hearing – August 16, 2023
B.   Court Memo Concerning Hearing – March 13, 2024
C.   TD Bank and Rausch Sturm's Rausch Strum's Motion to Continue, June 17, 2024
D.   Collection Letter – August 12, 2024
E.   Dismissal of Case in Polk County with Prejudice
F.   Plaintiff's Disputes to the CRAs
G.   Dispute Results from Equifax and Experian Confirming Accuracy